# NELSON ET AL. *v.* COUNTY COUNCIL FOR MONTGOMERY COUNTY ET AL.

[No. 58, September Term, 1957.]

588

*Decided November 25, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON and HAMMOND, JJ.

*Elizabeth H. Allen* for the appellants.

*C. Edward Nicholson, Jr.,* Deputy County Attorney for Montgomery County, with whom was *Charles M. Irelan,*

590

*County Attorney,* on the brief, for the County Council, appellee.

*Plummer M. Shearin,* with whom were *Robert G. Tobin, Jr.,* and *Bradshaw, Shearin, Redding & Thomas* on the brief, for Silver Spring Shopping Center, Inc., appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a decree dismissing the bill of complaint of appellants, who sought to vacate, set aside and declare null and void a resolution adopted by the County Council for Montgomery County, (the Council), rezoning property of the Silver Spring Shopping Center, Inc., (Silver Spring), appellees, from residential to general commercial.

Silver Spring owned real property in the Maryland-Washington Regional District of Montgomery County located at the southwesterly corner of the intersection of Colesville Road and Spring Street, Silver Spring, Maryland. Some of the appellants were residents and taxpayers of Montgomery County and owners of improved real estate in the vicinity of the subject property. Another appellant, Woodside Park Civic Association, was a non-stock corporation having approximately 180 members who were residents and taxpayers of Montgomery County and the owners of single family residential property adjacent to and generally to the north of the subject property.

Silver Spring, on July 29, 1955, filed an application with the Council, sitting as District Council for the Maryland-Washington Regional District of Montgomery County, requesting that the subject property be reclassified from R-60 zone (one family detached residential) and R-10 zone (apartments) to C-2 zone (general commercial). On November 3, 1955, the Council held a public hearing on the application.

A number of witnesses appeared before the Council, both in opposition to and in support of the requested zoning. Ex-

hibits were filed and arguments made by the attorneys for the applicant. A map filed with the application showed the actual zoning of the properties in the vicinity at the time of the filing of the application. In the same block in which the subject property was located was one parcel zoned C-2 (general commercial) and another parcel, located immediately adjacent to the subject property, zoned C-O (commercial office building). It also appears from other exhibits filed that immediately north of the subject property was a public parking lot with a capacity of 175 cars, and west of said parking lot was a substation of the Potomac Electric Power Company. Also filed were resolutions of three business and trade organizations favoring the granting of the application, and also the opinions and resolutions of the Council in three other zoning applications for reclassification of property in Silver Spring.

A number of citizens of Silver Spring, some of whom resided in Woodside Park, testified in opposition to the requested zoning and contended that the requested zoning was not limited to the use of the property for a hotel and any number of commercial uses would be permissible. They further contended that the erection of the hotel would cause a terrible traffic problem on the street and all through Woodside Park and would endanger the safety of children going to school. One of the attorneys for the applicant admitted there was a terrible traffic problem on Spring Street that must be taken into consideration and that the corner of Spring Street and Colesville Road, upon the widening of Spring Street, would be one of the most important corners in Montgomery County. The president of Woodside Park, one of the appellants, testified that Woodside Park was a fine residential community with 456 single family homes, some being very expensive, and that 255 school aged children in public schools and an additional number in private schools were estimated to live in Woodside Park. The Council was presently considering a proposal to widen Spring Street. Appellants also contended there was other property in the area zoned and available for commercial use and not so used.

Testimony was also offered that, unless shopping facilities

were provided in Silver Spring, residents would spend their money elsewhere. More than fifteen million dollars had been invested in that area. The subject property was adjacent in the rear to a public parking lot and on the south side to a building zoned commercial office. The property across the street from a portion of the subject property was located 210 feet from an active commercial corner. The Council was presently considering a proposal to widen Spring Street. Silver Spring intended, if the reclassification was granted, to build a commercial hotel with hotel facilities, offices and probably some apartments, and with stores on the first floor, and would employ up to five hundred people. The owner of the commercial office building adjacent to the subject property stated that he favored the granting of the application, feeling that the type of building proposed would do less violence to the residential area than any other type of zoning that could be granted on the lot.

On December 20, 1955, the Council, with two members dissenting, reclassified the subject property from R-10 and R-60 to C-2. The majority opinion of the Council recited the fact that the Maryland National Capital Park and Planning Commission, (the Commission), recommended that the application be held pending its completion of a new proposed zoning plan for the Silver Spring business district, but that it appeared that the Commission would not complete its proposed zoning plan until March or April. Among other things stated therein was that the widening of Spring Street would afford an excellent stopping point to the north of the business district, and to grant the application would aid in the accomplishment of a coordinated, comprehensive and systematic development of the Maryland-Washington Regional District. The dissenting opinion expressed the view that the reclassification was a definite encroachment on the residential zone and an illogical extension of the business district, and that the Council should wait for the Commission's recommendations.

On March 19, 1956, a bill of complaint was filed by the appellants praying that the action of the Council be vacated, set aside, and declared null and void and for other relief. From a decree dismissing that bill, the appellants appeal here.

Of course, it has been stated many times by this Court that the established rule is that, where an application is made for reclassification of a tract of land from one zone to another, there is a presumption that the zones established by the original zoning were well planned and arranged and were intended to be more or less permanent, subject to change only where there are genuine changes in conditions. Before a zoning board rezones a property, there should be proof either that there was some mistake in the original zoning or that the character of the neighborhood has changed to such an extent that such reclassification ought to be granted. *American Oil Co. v. Miller,* 204 Md. 32, 102 A. 2d 727; *Offutt v. Board of Zoning Appeals,* 204 Md. 551, 105 A. 2d 219; *Temmink v. Board of Zoning Appeals,* 205 Md. 489, 109 A. 2d 85; *Zinn v. Board of Zoning Appeals,* 207 Md. 355, 114 A. 2d 614. On appeal from an order of a zoning board, the reviewing Court has not the function or the right to zone or rezone but merely to decide whether the board's action was arbitrary, capricious, discriminatory or illegal. Whatever may be the personal opinion of the reviewing Court on rezoning, the law in this State is settled that in an appeal from a decision of the zoning board, the Court cannot substitute its own judgment as to the wisdom of the board's action. *Kroen v. Board of Zoning Appeals,* 209 Md. 420, 427, 121 A. 2d 181; *Montgomery County Council v. Scrimgeour,* 211 Md. 306, 316, 127 A. 2d 528.

Zoning in Montgomery County began as a result of Chapter 448, Acts of 1927, which created the Maryland-Washington Metropolitan District and the Maryland National Park and Planning Commission. As a result the first zoning ordinance was enacted on March 6, 1928, by the County Commissioners of Montgomery County. This Act was amended a number of times previous to 1939. By Chapter 714, Acts of 1939, various parts of Chapter 448 of the Acts of 1927, as amended, were repealed. However, Section 32 of the Act of 1939 ratified and confirmed "Any zoning ordinance, regulation, resolution, amendment or change, report, zoning map or other zoning action heretofore enacted, adopted, made or taken by the Board of County Commissioners of Montgomery

County * * *." The 1939 Act was subsequently amended by Chapter 992, Acts of 1943, but the above quoted sentence was not changed.

There is considerable dispute between the appellants and Silver Spring as to when the subject property was originally zoned. From the record before us it is difficult to determine that fact. Silver Spring claims that the original zoning was in 1928 and since that time, as shown by the exhibits, in the area within two blocks immediately north and east of the original commercial district, thirty-three changes in zoning classifications had taken place prior to the instant case and twenty-five of these changes were from residential to commercial zones. These exhibits were before the Council and the Court. There was also evidence that many changes had taken place in the immediate vicinity since the original zoning. The appellants, on the other hand, contend that the original zoning was made in 1947. They admit, however, that, since the original zoning, in the same block as the subject property, two properties zoned for multiple family residential have been changed, one to C-O (commercial office building) and the other to C-2 (general commercial). It does appear that the southwest sector of the block has been changed to general commercial zoning. Also, a Potomac Electric Power Company substation has been erected, by means of a special exception to the zoning ordinance, in the northwest sector and the County has established a paved public parking lot for 175 automobiles immediately to the north of the subject property. Therefore, there was evidence from which the Council could find that the character of the neighborhood had changed to such an extent that the classification requested should be granted.

During the pendency of the application before the Council and prior to the hearing, the Commission, by a report dated September 15, 1955, addressed to the Council, stated that "the staff is currently making studies leading up to a revised plan for streets and highways for the Central Business District of Silver Spring", and expressed the opinion that the approval of the application here, prior to the adoption of a new street and zoning plan, would tend to prejudice the plan-

ning "ahead of time". It recommended that the report of the Council on the application be held pending the outcome of the previously mentioned street and zoning plans for Silver Spring. However, as above stated, on November 3, 1955, the Council held the hearing and later granted the application.

Chapter 992, Section 2-S, Acts of 1943, Maryland-Washington Regional District Act, as amended, reads as follows: "Each District Council may from time to time amend its regulations or any regulation, including the maps or any map; but no such amendment shall be passed unless the same be first submitted to the Commission for approval, disapproval or suggestions, and the Commission shall have been allowed a reasonable time, not less than six months for consideration and report." Appellants contend that, because the Council did not hold the application as recommended by the Commission for at least six months, the rezoning here is unlawful. However, the above quoted Act used the word "suggestion" and the report from the Commission to the Council was a suggestion that the application be held pending the outcome of a proposed revised plan for streets and highways for the central business district of Silver Spring. Therefore, a suggestion was received by the Council before it acted. It is also evident that such a revised plan was not contemplated within a reasonable time. As pointed out by the trial judge in his order of March 14, 1957, although the report of the Commission recommended that the application be held in abeyance until a revised plan for streets and highways for the central business district of Silver Spring was adopted, nearly eighteen months had elapsed and no such plan had at that time been submitted.

Appellants further contend that, because of the testimony that a traffic problem would result if the rezoning was granted, the rezoning here would be a violation of Code, 1951, Article 66B, Section 21 (c), which provides in part that zoning must be designed to lessen congestion in the streets. *N. W. Merchants Terminal v. O'Rourke,* 191 Md. 171, 192, 60 A. 2d 743. In *Hardesty v. Board of Zoning Appeals,* 211 Md. 172, 181, 126 A. 2d 621, which involved zoning in Balti-

more County, there was a special local law which provided that zoning regulations should be made in accordance with a comprehensive plan and designed to lessen congestion in the streets. We will assume, without deciding, that Article 66B, Section 21 (c), *supra,* applies here. In the *Hardesty* case, *supra,* this Court reversed the action of the lower court and the board, in rezoning land· for a shopping center, as arbitrary and unlawful where the two streets giving access to the site were narrow and without sidewalks. It was there said: "To so reclassify the property would be a plain violation of the statutory requirement against congestion in the streets. From the testimony it appears that there is no way to remedy such a traffic hazard other than the widening of the public highways in the vicinity. There is no testimony that such widening is contemplated." To the same effect see *Temmink v. Board of Zoning Appeals,* 212 Md. 6, 128 A. 2d 256; *Price v. Cohen,* 213 Md. 457, 132 .A. 2d 125. Cf. *Loughborough Development Corp. v. Rivermass Corp.,* 213 Md. 239, 131 A. 2d 461.

However, in the instant case the widening of Spring Street was considered by the Council to be in immediate prospect and as designed to lessen the existing congestion on the main artery. . Moreover, it is difficult to see why the moderate extension of the commercial district to its logical stopping point, with adequate parking facilities adjacent thereto, would increase the traffic in Woodside Park, or affect the safety of school children therein. We cannot find in this case that the action of the zoning authorities was arbitrary, capricious, discriminatory or illegal. There was evidence before them from which they could conclude that the rezoning should be permitted. *Montgomery County Council v. Scrimgeour, supra.* The decree will therefore be affirmed.

*Decree affirmed, with costs.*