## BOARD OF ZONING APPEALS OF BALTIMORE COUNTY ET AL. v. BAILEY ET AL.

[No. 190, September Term, 1957.]

*Decided May 6, 1958.*

The cause was submitted to BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

Submitted on brief by *J. Lawrence Greene, Jr.,* and *Ginsberg & Ginsberg* for the appellants.

Submitted on brief by *Daniel B. Brewster* and *Turnbull & Brewster* for the appellees.

HORNEY, J., delivered the opinion of the Court.

John H. Renninger and Pauline A., his wife (the petitioners *or* the Renningers), owners of a six acre tract of land in a relatively rural area on Old Philadelphia Road, desiring to operate a trailer park, petitioned the Zoning·Commissioner of Baltimore County (the Commissioner) for a reclassification of their property from an R.6 Zone to an R.10 Zone, and for a special exception for a trailer park. Kermit Bailey and others (the protestants), a group of property owners and taxpayers residing in two nearby developments called "Forge Acres" and "Forge Heights," protested. The Commissioner granted the reclassification and the special exception. On appeal, the Board of Zoning Appeals (the Board) affirmed the Commissioner. But upon a review of the action of the Board by the Circuit Court (Raine, J.) the court reversed the Board.[1] From the action of the Circuit Court, the Renningers appealed to this Court.

The tract of land in question was originally classified as residential. Later, when the county adopted a system classifying residential properties according to the size of the area in which only one dwelling unit could be erected, the property

---

1. Baltimore County Code (1955), Title 30, sec. 532(g), provides that any aggrieved person or taxpayer has a right to petition the circuit court for a review of the board's decision.

was placed in an R.6 Zone, pending the adoption of a comprehensive land use map for the eleventh district of the county in which this property is situate.

The petitioners have owned their tract of land for twenty years. The distance from their property to the properties of the protestants is three-fourths of a mile by road and between one-third and one-half a mile as the crow flies. Separating the properties is a densely wooded area which prevents the residents of both Forge Acres and Forge Heights from seeing the Renninger property except during the winter season when it is visible only from Forge Acres. In the immediate vicinity of the Renninger tract there are several old houses, a gas station, a store, a restaurant, a beauty shop, a welding shop and "a trucking place." A school for colored children adjoins the property, and the nearest school for white children is six or seven miles away. The Board of Education did not object to the construction of the trailer park.

There was a great deal of testimony before the Board that the proposed Northeastern Expressway will eventually be located between the Renninger property and the two residential developments, which, when completed, will serve as a buffer area. Although it was admitted by the Director of Planning for Baltimore County and by an engineer for the State Roads Commission of Maryland that it is possible for the proposed location of the expressway to be relocated, both men were fairly confident the location would not be changed. Not all of the rights of way for the proposed highway had been acquired, but much of the land required had already been purchased.

The protestants claimed that a nearby trailer park would depreciate the value of their properties and would overcrowd the schools. Although he had never known any residents of a trailer park or camp, one of the protestants poignantly added, "I don't think * * * [trailer camp residents] are desirable. If they were they would try to buy homes. They are free lancers. We are paying heavy taxes. We have very few facilities; these people come in and are living free as far as taxes are concerned."

The Board granted the reclassification from R.6 to R.10

because it believed there could be "no logical objection" to a higher classification, and granted the special exception for the trailer park because the protestants would not be directly affected by it, especially for the reason that the proposed expressway would serve as a barrier between the trailer park and the properties in the two "Forge" developments.

When *certiorari* was granted by the lower court, the Board sent up the record in compliance with the writ. Apparently because he believed the record was deficient in that the evidence "as to a change in conditions in * * * [the] neighborhood or * * * [the] need for reclassification" [2] was unsatisfactory, Judge Raine remanded the proceeding to the Board for "a rehearing and redetermination of all the issues involved." The Baltimore County Code (1955), Title 30, sec. 532(h), authorizes the court to take evidence, *or* to appoint a referee to do so, and report to the court his findings of fact and conclusions of law. Another part of this section also empowers the court to affirm or reverse, in whole or in part, *and* to remand a case for the entry of a proper order, *or* for further proceedings, as the court shall determine. Subsequent to the order remanding the proceeding for a rehearing and redetermination of the issues, Judge Raine orally informed one of the board members that the Board was limited to taking additional testimony and forwarding it to the court. Whatever may have been the statutory foundation for the oral instruction is not apparent, but it is clear that what was actually done did not conform to any of the authorizations set forth in the statute. It is also quite obvious that the Board was not certain what it was supposed to do under the circumstances, but it is clear that after taking certain additional testimony it closed the proceedings and submitted such additional testimony along with the original record to the court for its determination. The Board did not make any further findings of its own after having taken the additional testimony. Moreover, if the remand to the Board

2. This statement is part of a quotation from *Temmink v. Board of Zoning Appeals,* 205 Md. 489, 497, 109 A. 2d 85 (1954), which the lower court used in its opinion remanding the proceeding to the board.

had the effect of designating it as the court's referee—as to which we express no opinion—it did not make the "findings of fact and conclusions of law" required by the statute. Whether Judge Raine should have considered the additional testimony in arriving at his decision appears to be doubtful, but its use for that purpose was not objected to in the lower court, and it is not an issue here. Thus whatever the effect of a consideration of such testimony may have been, it is not of any consequence here, particularly in view of the fact that it did not convince Judge Raine that he should affirm the Board. Instead he reversed the Board for two reasons: first, because there was no evidence of error in the original zoning or any change in the character of the area; and secondly, because he believed that the location of the expressway was too conjectural, and that the Board should have made its decision "on the basis of existing conditions and not on contemplated changes."

While it is generally true that a classification as an R.10 Zone is higher than that of an R.6 Zone, it might be argued that a reclassification which permitted the granting of a special exception for a trailer park was in effect a *downgrading* and not an *upgrading*. Obviously, the use of one term or the other depends to some extent upon the user's point of view, or, to use an apt colloquialism, it depends upon whose ox is being gored. In any event it is evident that the objections of the protestants were aimed not at the upgrading but at the granting of the special exception for a trailer park. For this reason the protestants deemed it expedient to object to the upgrading in order to protest the granting of the special exception, which they claimed was a downgrading.

In Maryland there seems to be no distinction between "rezoning up" and "rezoning down." See Note, 13 Md. L. Rev. 242 (1953). Apparently the same rules with respect to rezoning are applicable regardless of whether the reclassification is to a "higher" or a "lower" use. In *Northwest Merchants Terminal v. O'Rourke,* 191 Md. 171, 60 A. 2d 743 (1948), *Kracke v. Weinberg,* 197 Md. 339, 79 A. 2d 387 (1951), and *Bruning Bros. v. Mayor & City Council of Baltimore,* 199 Md. 602, 87 A. 2d 589 (1952), the issue was

the validity of a rezoning ordinance classifying land "upward," that is, from commercial to residential. The same standards were applied as in the "rezoning downward" cases. In the *O'Rourke* and *Kracke* cases the ordinance was held invalid. In the *Bruning* case it was held valid. It should be pointed out, however, that in all of those cases it was the property owners within the commercial zone who were protesting the "rezoning upward." In the *O'Rourke* case, for instance, the property owner complained that its land was suitable only for commercial use and that it would be unconstitutional to deprive it of this use by rezoning the land residential. The *specific question* as to whether the same rules must invariably be applied in a "rezoning up" as are normally applied in a "rezoning down" was not before us in the *O'Rourke, Kracke* and *Bruning* cases. Nor is the question squarely before us in this case, and we leave it open.

We think it is clear, however, that it was improper to grant a reclassification merely because the Board believed that there could be no logical objection to rezoning from a lower to a higher residential use. In this State, the rule is well settled that a rezoning to be valid must be based either upon a mistake in the original zoning or a change in the character of the neighborhood. *Eckes v. Board of Zoning Appeals*, 209 Md. 432, 121 A. 2d 249 (1956). As was said in *Kroen v. Board of Zoning Appeals*, 209 Md. 420, at p. 426, 121 A. 2d 181 (1956) : "The courts presume that the original zoning is well planned and designed to be permanent." It is also well settled that a court may not substitute its judgment for that of the legislative body or zoning authority—the Zoning Commissioner of Baltimore County in this case [3]—if the question of rezoning was fairly debatable. But if it is clear that the question was not debatable or that there are no facts

3. The Zoning Commissioner is vested with the duty and power of administering and enforcing the zoning regulations and restrictions, subject to some exceptions, and subject to the written approval of the County Council (formerly the County Commissioners). See Baltimore County Code (1955), Title 30, sec. 532(c), and *Baltimore County v. Egerton Realty Co.*, 217 Md. ——, 140 A. 2d 510 (1958).

to justify the zoning authority to rezone, then its action would be arbitrary in law, and it would be the duty of the court, under such circumstances, to reverse the zoning authority. *Eckes v. Board of Zoning Appeals, supra,* and the cases therein cited. See also *Hardesty v. Board of Zoning Appeals,* 211 Md. 172, 126 A. 2d 621 (1956); *Talbot County v. Troxell,* 214 Md. 135, 132 A. 2d 845 (1957); and *Nelson v. Montgomery County,* 214 Md. 587, 136 A. 2d 373 (1957).

The case of *Huff v. Board of Zoning Appeals,* 214 Md. 48, 133 A. 2d 83 (1957), the sole authority relied upon by the Renningers on the question of reclassification is inapplicable here. Judge Hammond expressly stated in that case that the facts were exceptional, and that "the ordinary rules applicable to reclassification did not apply, * * *." At p. 62, he further said:

"If the regulations be read as we read them, it is clear that the Manufacturing, Restricted classification is analogous to a special exception, and the rules which are applicable to special exceptions would apply, not the general rules of original error or change in conditions or the character of the neighborhood, that control the propriety of rezoning."

In the case now before us—regardless of whether the additional testimony referred to herein is taken into consideration or not—there was no evidence that the area had been erroneously zoned in the first instance or that there had been any change in the character of the area since. There was also no conclusive evidence that the expressway, if and when it is constructed, would affect such changes in the character of the neighborhood after its completion as would justify a rezoning either "up" or "down" *now* from its present classification to another.

Although it is more than likely that the expressway when completed will effect a change in the area one way or the other, we do not reach the question here as to whether a contemplated change in conditions is sufficient to justify a rezoning. Nor is it necessary for us—because the tract of land in question will remain zoned R.6 for the time being—

to pass upon or even discuss the question of the special exception for the trailer park inasmuch as the Baltimore County Zoning Regulations (1955), Sec. 209.3, do not permit trailer parks in an R.6 Zone.

Since the reclassification granted by the Commissioner and affirmed by the Board was improper, the action of the lower court reversing the Board must be affirmed.

*Order affirmed, the appellants
to pay the costs.*