BIGENHO, ET AL. *v.* MONTGOMERY COUNTY COUNCIL, ET AL.

[No. 24 and No. 25, September Term, 1967.]

*Decided January 5, 1968.*

The causes were argued before HAMMOND, C. J., and MAR-BURY, BARNES, McWILLIAMS and SINGLEY, JJ.

*C. Edward Nicholson* for appellants in No. 24 and appellees in No. 25.

*Jerome E. Korpeck* with whom were *Wheeler & Korpeck* on the brief, for Floyd E. Davis, Jr., et al., part of appellees in No. 24 and appellants in No. 25.

No brief filed for Montgomery County Council, other appellee in No. 24.

MARBURY, J., delivered the opinion of the Court.

The subject of these appeals is the rezoning of an approximately 270 acre tract of land in Montgomery County, known as the "Floyd Davis" (Davis) Tract. In November of 1965 the owners of this tract filed, with the Montgomery County Council, five separate requests for the rezoning of the subject property as follows:[1]

E-642 for 10 acres of C-1 or C-2
E-643 for 57 acres of C-P or I-3
E-644 for 27 acres of R-20 or I-3

---

1. Montgomery County Code (1965), ch. 111, provides the following zoning classifications:
C-P—Commercial Office Park
C-1—Local Commercial
C-2—General Commercial
I-1—Light Industrial
I-3—Industrial Park
R-20—Multiple-family, medium density residential
R-H—Multiple-family, high rise planned residential

E-645 for 118 acres of I-1 or I-3

E-646 for 54 acres of R-20 or R-H

At the time these applications were filed the Davis tract was zoned R-90 (one-family, detached, restricted residential) pursuant to the Master Plan of the Cabin John Watershed. Prior to the adoption in 1957 of this Master Plan the subject property was zoned R-60 (one-family, detached residential) and R-A (agricultural residential). By its report, dated January 18, 1966, the technical staff of the Maryland-National Capital Park and Planning Commission, acting in its advisory capacity, recommended as follows:

E-642 denial of the C-2 and C-1 zones

E-643 approval of the C-P zone

E-644 approval of the I-3 zone, denial of the R-20 zone

E-645 denial of the I-1 zone, approval of the I-3 zone

E-646 denial of the R-H zone and R-20 zone

The Planning board itself, after making minor adjustments, approved the recommendations of the technical staff, with slight reductions in acreage.

On February 17 and 18, 1966, the five applications came before the Montgomery County Council sitting as the District Council for that portion of the Maryland-Washington Regional District located in Montgomery County, Maryland, where they were consolidated and heard as one application. On April 26, 1966, the Montgomery County Council, by formal resolution, acted on the five applications as follows:

E-642—granted C-1

E-643—granted C-P

E-644—granted I-3

E-645—granted I-3

E-646—granted R-H

The protestants-appellants duly noted timely appeals to the Circuit Court for Montgomery County and on September 2, 1966, these appeals were argued together before Judge Shure, who rendered a memorandum opinion and order on December 6, 1966, in which the action of the Council in granting the requested zoning in E-642, E-643, E-644, and E-645 was affirmed, and the granting of the requested zoning in E-646 was

reversed. The protestants filed timely notice of appeal of the action of the lower court to this Court on E-642, E-643, E-644, and E-645 alleging that they were aggrieved persons, and the applicants duly appealed as to E-646. These two appeals, Nos. 24 and 25 respectively, September Term, 1967, were consolidated and argued together before this Court as one case.

The Davis property is a single tract, roughly rectangular in shape, in the midst of a heavily populated suburban section of Montgomery County. At the time of these applications it was undeveloped and was being used as a farm. It is bounded on all four sides by heavily travelled public ways, two of them interstate highways. Walter Johnson High School and the proposed site of an elementary school are situated within the boundaries of the subject property. There are also several single-family dwellings and farm buildings located on the Davis property. In the immediate vicinity there are churches, a library, shopping centers, a radio station, an electric power company substation, a tract zoned for high-rise apartments to the west across Interstate Route 270, and a 2.7 acre tract to the east across Old Georgetown Road ordered rezoned R-H, which is now pending on appeal before us in case No. 221, September Term, 1967. With these exceptions the property is surrounded by single family residences. To the north across Interstate Route 70-S the land is zoned R-R (rural residential) ; to the east across Old Georgetown Road most of the land is zoned R-90, except two small parcels zoned C-1 and the above mentioned 2.70 acre parcel ordered rezoned R-H. Across Democracy Boulevard to the south the land is zoned R-60 and R-90. To the west of Interstate Route 270 is a large area zoned C-2, R-20, R-30 (multiple-family, low density residential) and R-H. The remaining area is zoned R-90.

· The protestants below (Bigenho, et al.) contend that there was insufficient evidence of mistake or change to warrant the rezoning of the subject property. We find it unnecessary to consider this contention as, in our opinion, the "mistake — change" rule does not govern here as to E-643, E-644, E-645, and E-646.

In regard to the property covered by applications numbered E-643, E-644, E-645 and E-646, we think that these parcels in-

volve "floating zones," analogous to special exceptions. See *Tauber v. Montgomery County,* 244 Md. 332, 223 A. 2d 615; *Knudsen v. Montgomery County,* 241 Md. 436, 217 A. 2d 97; *Beall v. Montgomery County,* 240 Md. 77, 212 A. 2d 751; *Costello v. Sieling,* 223 Md. 24, 161 A. 2d 824; *Huff v. Bd. of Zoning Appeals,* 214 Md. 48, 133 A. 2d 83. A floating zone is differentiated from a so-called "Euclidean" zone, in that while the latter is a specific area defined by boundaries previously determined by the zoning authority, the former has no such defined boundaries and is said to "float" over the entire area of the district or zone where it may eventually be established.

The floating zone is different from the establishment of an Euclidean zone in that it is initiated on the instigation of a land owner within the district rather than that of the legislative body. While this opens an avenue of attack on the basis that the action is taken for the benefit of an individual land owner rather than for the good of the community as a whole, this criticism is blunted by the fact that the floating zone is subject to the same conditions that apply to safeguard the granting of special exceptions, *i.e.,* the use must be compatible with the surrounding neighborhood, it must further the purposes of the proposed reclassification, and special precautions are to be applied to insure that there will be no discordance with existing uses. These precautions include such restrictions as building location and style, the percentage of the area covered by the building, minimum green area, minimum and maximum area of the use, minimum setback from streets and other uses, requirement that a site plan be approved, and a provision for revocation of the classification if the specified restrictions are not complied with.

Here, the Master Plan, Cabin John Watershed, zoning that part of the Maryland-Washington Regional District in Montgomery County, was adopted in 1957. The classifications involved in E-643, E-644, E-645 and E-646 were all created after 1957—I-3 in 1959, R-H in 1962 and C-P in 1963. Thus the only means of effectuating the new classifications short of adopting a new master plan would be to change existing classifications. The parcels involved in the above mentioned applications fall within the definition of a floating zone. It remains necessary

only to examine the three classifications to ascertain if the requisite safeguards are present.

In considering these safeguards it is to be borne in mind that the area affected was not a developed integrated portion of the existing community. Rather, it was an undeveloped tract insulated from the surrounding neighborhood by heavily travelled major thoroughfares. Therefore, the use of the entire tract will have a minimal impact on the community as a whole. Also to be considered is the size of the subject property. When a tract as large as this is reclassified there is little possibility of its being invidious spot zoning. The Davis tract embraces an area large enough to be considered a community in itself and when it is zoned into several classifications it is as important to consider whether the permitted uses are in harmony with each other as it is to ascertain if the entire proposed development is compatible with the surrounding neighborhood.

As to the granting of the C-P classification for E-643 and the I-3 classification in E-644 and E-645 we find that the evidence before the Council was at least fairly debatable and accordingly, that Judge Shure was correct in affirming the Council's action. The 1957 Master Plan showed a symbol on the south west portion of the Davis tract indicating that an employment center was to be located there. The uses permitted under I-3 and C-P are especially keyed to fulfill the anticipations of the planners with respect to such an employment center. The uses permitted by the C-P zone could have reasonably been found not in conflict with existing uses in the community and their effect was minimized by their location at the juncture of two interstate highways and the fact that the remainder of the parcel is contiguous to the I-3 and R-H zones that are parts of the subject tract.

Ordinarily an industrial use is thought to be at variance with the maintenance of the standards usually associated with a residential community. Thus the purposes and restrictions provided for in the I-3 classifications must be specifically scrutinized. Montgomery County Code (1965), Section 111-24 establishing the I-3 zone states as follows:

> "The purpose of the industrial park (I-3) zone is
> to provide a protective zone for a park-like development

of industry that is based on the performance of an industry as well as on the type of industry. In order to secure this type of development, the various regulations herein described must be met. These regulations have been established so as to provide a healthful operating environment for industry, for the protection of industry from the encroachment of commercial and residential uses adverse to the operation and expansion of such industry and to protect industries within the district from the adverse effect of other incompatible industries, and, at the same time, to reduce to a minimum the impact of industries on surrounding nonindustrial land uses; to lessen traffic congestion; to protect the health and safety of the residents or workers in the area; to prevent detrimental effects to the use or development of adjacent properties or the general neighborhood; and to promote the health, safety, morals, comfort and welfare of the present and future inhabitants of the district."

A further perusal of this section indicates that the permitted uses under this classification are regulated in such a way as to provide a minimum effect on neighboring activities. Furthermore, the land under this classification is separated from contact with any residential area by heavily travelled divided highways.

We also hold that the court below was correct in affirming the Council's action in allowing the requested zoning in application E-642. This reclassification was objected to by the protestants on the ground that the Council in part based its decision on the premise that the reclassification was justified on the basis that it complemented the other zoning changes granted at the same time and that it was therefore a "bootstrap" operation. This objection has no merit. In support of this the protestants relied on the case of *Bishop v. Bd. of Co. Comm'rs,* 230 Md. 494, 187 A. 2d 851, where the Board granted a new classification of a parcel partially in reliance on a need created by the rezoning of a second parcel where both hearings took place the same day, but the hearing on the second application took place *after*

that of the application that was the subject of that appeal. But there this Court affirmed the action of the Board saying: "That the enclave was taken into consideration before the Board indicates that thought was given to the general area, not merely to the one property which was the subject of the rezoning application then under consideration." The same is true in the present case and the fact that the Council considered all of the five applications in granting each of them indicates that the entire area of the subject property was considered as an integrated unit in compliance with the comprehensive plan of development of the area. It is well settled that piecemeal zoning is to be avoided. *Board v. Levitt & Sons,* 235 Md. 151, 200 A. 2d 670; *Muhly v. County Council,* 218 Md. 543, 147 A. 2d 735; *County Comm. v. Troxell,* 214 Md. 135, 132 A. 2d 845. In *Muhly,* at page 547, we said: "Changes that are consistent with a long-range plan are preferable to piecemeal adjudications. *Zinn v. Board of Zoning Appeals,* 207 Md. 355, 364." In this last cited case two parcels in close proximity were zoned for shopping centers without a showing of need for such facilities. In reversing the order allowing the reclassification this Court said, "Whatever the merits of each application considered *separately* we think there can be no justification for both. It is this kind of piecemeal zoning that brings the whole process under criticism." (Emphasis added.) In the instant case this is the very situation that was avoided by considering the several applications as an integrated unit and we hold that the granting of E-643, E-644, and E-645 justified the reclassification of the parcel covered by application E-642.

The protestants urged further that the evidence relating to traffic conditions as affecting the subject property was faulty and insufficient to warrant the rezoning. Traffic conditions may be material factors in the rezoning of an area. *Temmink v. Bd. of Zon. Appeals,* 212 Md. 6, 128 A. 2d 256; *N. W. Merchants Term. v. O'Rourke,* 191 Md. 171, 60 A. 2d 743. But while the increase in traffic may be considered it need not be controlling for in *Marcus v. Montgomery County,* 235 Md. 535, 541, 201 A. 2d 777, this Court said:

> "Appellants draw attention to the claim that commercial and apartment zoning is likely to bring more

> people to a given area and that as a consequence the traffic and school population will increase, and that those members of the neighborhood using the local school and shopping area will suffer from the consequent traffic congestion and overpopulated school facilities. These are inconveniences likely to be suffered by any member of the public, far or near, and do not require a denial of the application."

In the proceedings below before the Council there was expert testimony on both sides as to the effect of the proposed zoning on traffic conditions in the area. The Council chose to give more weight to the testimony of the applicants' expert Voorhees, whose qualifications as a traffic expert were not questioned. This witness testified that the roads in the area were sufficient to take care of the traffic flow resulting from the development of the subject property. Also the proposed general plan for the area would tend toward lightening the traffic in that the I-3 and C-P zones will furnish employment sources for many of those living in the R-H zone thus eliminating many outgoing and incoming trips. Also pedestrian promenades were provided for in the subject area that would further tend to minimize vehicular traffic.

The protestants also argued that the Council erred fatally in granting the zoning requested in E-643, E-644, E-645, and E-646 since they made no specific finding that the requested zoning was compatible with the area. For this they rely on *Bujno v. Montgomery Co. Coun.*, 243 Md. 110, 220 A. 2d 126. They do not point out, however, that in *Bujno* at page 119 Judge Barnes said, speaking for this Court, "Although it is most desirable that the Council should find specifically that the proposal does comply with the R-H zone purposes, this finding may be inferred from the Council's opinion * * *." The Council, in its opinions pertaining to these applications said variously that:

> "This location for a C-P zone is ideal in that it is afforded excellent access by high speed roads. The land is completely suited for this type of development and is an orderly implementation of the recommendations of the Master Plan."
> * * *

"The combining of E-644 with Applications E-645 and E-643 will permit orderly development of the employment center symbolized on the Master Plan."

* * *

"The ideal location and accessibility of this property are essential for industrial development. The built-in protections of the I-3 classification offer adequate protection to the single-family dwellings across Democracy Boulevard."

* * *

"The District Council disagrees with the recommendations of the Planning Board and the Technical Staff. The availability of multi-family dwellings as a compliment to the employment center established by the granting of Applications E-643, E-644, E-645, is deemed to be necessary for good planning. The traffic problems which are discussed by the Staff and Board have been considered but are not so serious as to require denial of the application."

It clearly can be inferred that in making these statements that the Council considered the facts and made findings thereon although its opinions do not so state specifically.

As to application E-646, we find that the Council had before it substantial evidence which justified it in granting the requested R-H classification. As set forth above the Council found this reclassification to be compatible with and even "necessary for good planning." Also there are adequate precautions provided in Montgomery County Code (1965), Section 111-16, pertaining to uses, area requirements, access, off street parking, green area, lighting, etc. to insure a minimum interference with existing uses. This section provides for site plan approval and if specifications call for a building that would be detrimental to the surrounding area the application for a building permit could be denied. The purposes of the R-H zone—high density residential development, economy of public services, lessening of traffic congestion, etc.—will also be served by including this zone in proximity to the employment and shopping centers as we have stated above.

The function of a court in reviewing an action taken by the zoning authority is narrow and restricted in scope, *e.g., Beall v. Montgomery County, supra,* and if the record indicates that the question was fairly debatable, then a reviewing court will not substitute its judgment for that of the zoning authority. *Pallace v. Inter City Land Co.,* 239 Md. 549, 212 A. 2d 262. We hold that the questions before the Council were fairly debatable and therefore should not be disturbed.

For the reasons above stated the order of court affirming the Council in granting applications E-642, E-643, E-644, and E-645, the subject of appeal No. 24, will be affirmed; and the order of court reversing the Council's action in granting application E-646, the subject of appeal in No. 25, will be reversed and the order of the District Council reinstated.

> *Order of Court in No. 24 affirmed, and in No. 25 order reversed and order of the district council reinstated. Costs to be paid by appellants in No. 24 and by appellees in No. 25.*