WIER, ET AL. *v.* WITNEY LAND
COMPANY

[No. 266, September Term, 1969.]

*Decided April 9, 1970.*

 ██

 ██

 ██

 ██

 ██

 ██

 ██

*Motion for rehearing filed April 28, 1970; denied May 4, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SMITH and DIGGES, JJ.

*Werner G. Schoeler,* with whom were *Roland R. Bounds, Kenneth D. Short* and *Bounds, Schoeler & Short* on the brief, for appellants.

*W. Lee Harrison* for appellee.

BARNES, J., delivered the opinion of the Court.

In this zoning appeal, the appellants, John B. Wier, Jr., et al., who were protestants below, challenge the propriety of the granting by the County Board of Appeals of Baltimore County (the Board) of the reclassification of Phases I and II consisting of approximately 87.7 acres of land (net) and 43 acres of land, respectively, owned by the Witney Land Company, a Maryland Corporation, owned by Robert E. Meyerhoff and his brother, Harry Meyerhoff (petitioners, Witney or owner) from the existing R-20 (Residence, one-family, lot 20,000 square feet), R-10 (Residence, one-family, lot average of 10,000 square feet) and R-6 (Residence, one and two family, lot area 6,000 square feet) zones to the R-A (Residence, Apart-

ments) zone and the granting of a Special Exception for two 8 story elevator apartment buildings for 96 units each. The appellee and cross-appellant, Witney, who was the petitioner for reclassification of 299.1920 acres of its 325 acre tract in the Eighth Election District of Baltimore County consisting of Phases I, II, III and IV (Phase III consisting of 80 acres, 78.9 acres net, and Phase IV consisting of 82 acres, 77.3 acres net), challenges the correctness of the action of the Board in denying the requested reclassification of Phases III and IV, from the existing R-40, R-20 and R-10 zones to the R-A, B-L (Business, Local) and B-R (Business, Roadside) zones as set forth in the application. The action of the Board by its order of July 2, 1968, was affirmed by the Circuit Court for Baltimore County (Jenifer, J.) by its order of June 10, 1969, and a timely appeal and cross-appeal were perfected from that order of the lower court.

Three questions are presented to us for our decision, i.e., whether or not the lower court erred (1) in refusing to dismiss the appeal of the protestants to it on the ground that they were not "persons aggrieved" with sufficient status to maintain the appeal; (2) in declining to hold that the Board acted arbitrarily and capriciously in approving the reclassification for Phases I and II; and (by the cross-appellants) (3) in declining to hold that the Board acted arbitrarily and capriciously in not granting the reclassification for Phases III and IV.

This case was thoroughly and carefully tried before the Board. There were seven full days of testimony with a transcript of over 1,050 pages with some 46 documentary exhibits—26 filed by the petitioners and 20 by the protestants. The expert testimony produced by both sides was given by well qualified and well known experts. The opinion of the Board, filed on July 2, 1968, consists of some nine printed pages in the Record Extract and is a carefully considered opinion. The opinion of the lower court is also carefully considered, well written and has been most helpful to this Court. It consists of 16 printed pages in the Record Extract. Indeed, the analysis of the

substantial record in the case by the lower court in its opinion is so accurately and completely done, that we shall adopt the statement of the facts as given in the lower court's opinion as our statement of the facts in this opinion for the Court. Judge Jenifer stated the facts as follows:

"The Petitioner in this case is Witney Land Company, the legal owner of a tract of land containing 325 acres situate in the Eighth Election District of Baltimore County, a portion of which was acquired in November of 1957 and the remaining portion of which was acquired in January of 1959. The corporation is owned by Robert E. Meyerhoff and his brother, Harry Meyerhoff, both of whom have been successful land developers of both dwellings and apartments since 1946. The zoning petition filed in the office of the Zoning Commissioner of Baltimore County on April 4, 1967, seeks a reclassification of 299.192 acres of the entire tract from R-6, R-10, R-20 and R-40 zones to R-A (Apartments), B-L (Business, Local) and B-R (Business, Roadside) zones. The petition also requests a special exception for two elevator apartment buildings on 10.0163 acres of the apartment use land. The existing zoning classifications are shown on the Eighth District Land Use Map adopted December 20, 1955. The specific reclassifications sought are as follows:

| "R-6 to R-A | Parcel A | 26.9503 acres |
| R-10 to R-A | Parcel B | 169.7915 acres |
| R-10 to B-L | Parcel C | 15.8883 acres |
| R-10 to B-R | Parcel D | 13.8113 acres |
| R-20 to R-A | Parcels E,F,G | 41.4900 acres |
| R-40 to R-A | Parcel H | 31.2606 acres |
| | Total acreage | 299.1920 acres |

"The Zoning Commissioner of Baltimore County, by an Order dated May 16, 1967, denied

the petition in its entirety. Although recognizing many changes in zoning, road patterns and available public utilities in the immediate area since the adoption of the Eighth District Map on December 20, 1955, it was his opinion that: 'Without an up-to-date comprehensive map and apartment zoning criteria, the petitioner's request is premature and could be detrimental to the public interest.'

"The subject tract is generally located south of Bosley Road, east of Warren Road and west of Pot Spring Road. There is a mixture of zoning and land uses surrounding the property. On the north side, there is R-20 and R-40 zoning facing the south side of Bosley Road; and on the north side of said road, there is R-40, R-20 and R-10 zoning on a sizeable tract of land now under development by other interests. The majority of the western and southwestern boundary is zoned R-A and is presently being developed for apartment use known as Briarcliff Apartments. Another portion of the southwestern boundary abuts an electric transmission line of the Baltimore Gas and Electric Company and land owned by Baltimore County, Maryland, developed as the Longview Golf Course. This public use along with a small undeveloped tract of R-A land and the Dulaney Senior High School abut the subject tract on the south. The entire eastern boundary is land owned by Villa Maria Inc., a Catholic corporation, and although zoned R-40, is devoted to institutional use by the Stella Maris Hospice and the St. Vincent Home.

"A large portion of the land sought to be rezoned was developed by the petitioner as an eighteen hole golf course in 1963 known as Dulaney Springs Golf Club and is presently being utilized for this purpose. This was done so as to enable the petitioner to acquire some reve-

nue from the property and to hold the land until it was ready for development. The tract used as a golf course is situate north and northeast of Cranbrook Road and west and northwest of Padonia Road. That portion of the Petitioner's property located south of Cranbrook Road and east of Padonia Road is vacant, unimproved land.

"The petitioner proposes to develop the 299 acres in four stages in the event the reclassification of the property as an entirety were granted. Phase I (1) would comprise 90 acres (82.7 acres net) and would be developed into 1532 apartment units, 1340 of which on 72.7 net acres would be of the garden type and the remaining 192 of which on approximately 10 acres would be contained in two, eight story elevator type apartment buildings of 96 units each. It is estimated that Phase 1 would require approximately seven years for completion depending upon the market demand for apartment accommodations. The portion of the land embraced in Phase 1 is bounded by Cranbrook Road, R-A zoning (Briarcliff Apartments) and the County owned Longview Golf Course on two sides, a small undeveloped R-A tract owned by Stefanowicz and the Dulaney Senior High School on the south side and the Villa Maria property on the east side.

"Phase II (2) consists of 47 acres (43.4 acres net) on which there is proposed to be constructed 524 garden apartment units and an estimated additional period of three years would be consumed in this phase. This area is bounded by Ridgland Road, the northerly side of Cranbrook Road, the westerly side of the Baltimore Gas and Electric Company transmission line and a line of division through the remaining land of the Petitioner. This part of the project

would necessitate the relocation of two holes of Dulaney Springs Golf Course on other land of the Petitioner.

"Phase III (3) of the project would comprise 80 acres (78.9 acres net) of land on which it is proposed to build 1,300 additional apartment units, some being garden type and some being in elevator apartment buildings. The estimated period of construction would consume an additional five to six year span.

"Phase IV (4) includes the remaining 82 acres (77.3 acres net) of the 299 acre parcel on which there is planned for construction 902 additional apartment units on approximately 52.4 acres, a neighborhood shopping center of 70,000 square feet on 15.8 acres of B-L land and a one hundred room inn and restaurant on 13.8 acres of B-R land. It is contemplated by the petitioner that this last phase would require an additional five years for completion.

"The entire project as proposed by the applicant would contemplate the construction of a total of 4258 apartment units, shopping center and motor inn. According to the Vice-President of the petitioning corporation, completion of the plan would require an estimated fifteen to twenty year period of time.

"The hearing of this case before the Board consumed seven full days of testimony on December 19, 1967, January 9, 24, 25, 1968, and February 27, 28 and 29, 1968. The transcript contains over 1050 pages and 46 exhibits were filed, 26 by the petitioner and 20 by the protestants. The petitioner produced the following witnesses: (1) Robert E. Meyerhoff, Vice-President of Witney Land Company, the legal owner of the subject property; (2) Robert A. Whiteford, a consulting civil and sanitary engineer; (3) Bernard Willemain, a planning and zoning consul-

tant; (4) Albert B. Kaltenbach, Director of Public Works for Baltimore County; (5) Walter Worthington Ewell, a registered professional civil engineer specializing in the traffic study field; (6) Frederick P. Klaus, a realtor and appraiser. The protestants presented the following witnesses: (1) Mrs. Twilah E. Weir, a property owner residing at 702 Bosley Road, Cockeysville, Maryland, located 150 feet northwest and within sight distance of the subject property, and who also had made a survey of school pupil yield from individual homes and apartment units; (2) Reverend Charles Robert Neilsen, Rector of Sherwood Episcopal Church, Sherwood and York Roads, Cockeysville, Maryland; (3) John Critcher, a property owner who resides at 114 Bosley Road, Cockeysville, Maryland, one-half to three-quarters of a mile from property involved, but within sight distance thereof, who testified individually and on behalf of the Glenmore Area Improvement Association; (4) Stanley C. Magersupp, a property owner who resides at 2315 Raven View Road in the Pot Spring community about one mile distant from the southern part of the Petitioner's property, who testified on his own behalf and on behalf of the Greater Timonium Community Council; (5) William B. Guy, Jr., a real estate broker and appraiser; (6) Eugene J. Clifford, Traffic Engineer for Baltimore County; (7) Mrs. Virginia Brown, a property owner residing at 621 Sherwood Road, near Warren Road, Cockeysville, Maryland; (8) Eduardo Acevedo, a District Engineer for the State Department of Water Resources; (9) Fred W. Tuemmler, a Zoning and Planning Consultant and professional civil engineer; and (10) George E. Gavrelis, Director of Planning for Baltimore County.

"The Board held the case under advisement

for a considerable period and filed its opinion and order under date of July 2, 1968. By its decision, the Board granted the reclassification to R-A zoning for Phases 1 (90 acres) II (47 acres) as requested by the petitioner and the special exception for the two eight story apartment buildings containing 96 units each but denied the reclassification requested for Phases III (80 acres) and IV (82 acres). On July 24, 1968, an order for appeal was filed on behalf of thirty-six individual protestants and on August 1, 1968, a second order for appeal was filed on behalf of the protestants, Vestry of Sherwood Episcopal Church and Jerome J. Gebhart, who resides at 599 Cranbrook Road, Cockeysville, Maryland. On November 15, 1968, the petitioner, Witney Land Company, filed a motion to dismiss the appeals of the protestants alleging that they are not 'parties aggrieved' and therefore do not possess the status to maintain their appeals. The appeals of the protestants give rise to Miscellaneous Case No. 4021. On July 31, 1968, the Applicant filed an order for appeal from the decision of the Board in denying the reclassification sought under Phases III and IV which gives rise to Miscellaneous Case No. 4026."

### 1.

In the opinion of the lower court, the protestants had sufficient status to maintain their appeal to that court as "parties aggrieved." We agree with the lower court's conclusion in this regard.

By Section 604 of the Baltimore County Charter, an appellant from a decision of the Board to the Circuit Court for Baltimore County must be an aggrieved party as required by the State Zoning Enabling Act, Code (1967 Repl. Vol.), Art. 66B, § 7 (j). See also the Baltimore County Code (1968), Sections 22-28. We reviewed the prior decisions of this Court and enumerated the ap-

610

plicable principles to determine whether or not an appellant from a Board was an "aggrieved party" in *Bryniarski v. Montgomery County Board of Appeals*, 247 Md. 137, 230 A. 2d 289 (1967). We stated the general rule as follows:

> "Generally speaking, the decisions indicate that a person aggrieved by the decision of a board of zoning appeals is one whose personal or property rights are adversely affected by the decision of the board. The decision must not only affect a matter in which the protestant has a specific interest or property right but his interest therein must be such that he is personally and specially affected in a way different from that suffered by the public generally. *DuBay v. Crane*, 240 Md. 180, 185, 213 A. 2d 487 (1965). The circumstances under which this occurs have been determined by the courts on a case by case basis, and the decision in each case rests upon the facts and circumstances of the particular case under review."
> (247 Md. at 144, 230 A. 2d at 294).

After we reviewed the principles applicable to the degree of certainty and the proof of aggrievement in equity and mandamus cases, we discussed the principles applicable to appeals in zoning cases, in relevant part, as follows:

> "(a) It is sufficient if the facts constituting aggrievement appear in the petition for appeal either by express allegation or by necessary implication. *Town of Somerset v. Montgomery County Board of Appeals*, 245 Md. 52, 225 A. 2d 294 (1966).
> "(b) An adjoining, confronting or nearby property owner is deemed, prima facie, to be specially damaged and, therefore, a person aggrieved. The person challenging the fact of ag-

grievement has the burden of denying such damage in his answer to the petition for appeal and of coming forward with evidence to establish that the petitioner is not, in fact, aggrieved."

* * *

"(c) A person whose property is far removed from the subject property ordinarily will not be considered a person aggrieved. *Wilkinson v. Atkinson,* 242 Md. 231, 218 A. 2d 503 (1966); *DuBay v. Crane, supra; City of Greenbelt v. Jaeger,* 237 Md. 456, 206 A. 2d 694 (1965); *Marcus v. Montgomery County Council,* 235 Md. 535, 201 A. 2d 777 (1964); *Pattison v. Corby,* 226 Md. 97, 172 A. 2d 490 (1961). But he will be considered a person aggrieved if he meets the burden of alleging and proving by competent evidence—either before the board or in the court on appeal if his standing is challenged— the fact that his personal or property rights are specially and adversely affected by the board's action."

* * *

"4. If any appellant is a person aggrieved, the court will entertain the appeal even if other appellants are not persons aggrieved. See e.g., *Marcus v. Montgomery County Council, supra.*

"5. The status of a person to appeal as a 'person aggrieved' is to be distinguished from the result on the merits of the case itself. In determining status to appeal, the question is whether the property owner may reasonably be thought to be specially damaged if the application is approved. Testimony may be taken on the point by the trial court. *Town of Somerset v. Montgomery County Board of Appeals, supra.* If, on the merits, the board acted properly in approving the application, the protesting property owner is not damaged in law, however much he may be damaged in fact. His damage is then *dam-*

*num absque injuria.* Because the result on the merits might be adverse, however, does not mean that the protestant would not have status to challenge the board's action."
(247 Md. at 144-146, 230 A. 2d at 294-295).

In the *Bryniarski* case we held that three protestants had established their status, *in fact,* as "persons aggrieved" by the proposed development in that case. Their status had been established by testimony in regard to the adverse effect of additional traffic on their properties as contrasted with expected traffic to be generated from the operation of a medical office building; the adverse effect of the proposal upon the general plan for the physical development of the District; and, injury to one property resulting from the height of the proposed building. In their petition for appeal from the action of the Board, the protestants alleged that they were parties to the proceeding before the Board (and this is not disputed) and "are property owners in the immediate neighborhood of the subject property, taxpayers, and constitute parties aggrieved by the said Order" of the Board.

The petitioner Witney filed a motion to dismiss the appeal on November 15, 1968, the day of the hearing before the lower court. There was no effort by the protestants to produce additional testimony before the lower court to amplify their status as aggrieved parties as we indicated in *Town of Somerset v. Montgomery County Board of Appeals,* 245 Md. 52, 225 A. 2d 294 (1966) could be done and as was done by the protestants in *Aubinoe v. Lewis,* 250 Md. 645, 244 A. 2d 879 (1968). The protestants in the instant case relied upon their allegations in their petition for appeal and upon the evidence produced before the Board. In holding that the motion to dismiss the appeal should be denied and that the protestants had status as "parties aggrieved," Judge Jenifer aptly stated:

"At least three of the protestants, namely, Mrs. Weir and Messrs. Critcher and Magersupp, are

in sight distance of the property forming the subject of the petition. The Weir property is located on the northerly side of Bosley Road at the north end of the petitioner's tract of land although it is located approximately 1,100 feet from one of the parcels reclassified by the Board. There was considerable testimony as to increase in traffic and change in the nature of the use of land in the area, which according to the individual testimony of these protestants coupled with that of their real estate expert, Mr. William B. Guy, Jr. would be sufficient under the law that their personal or property rights would be specially and adversely affected by the action of the Board. These protestants were either confronting or nearby property owners and are deemed, prima facie, to be specially damaged and, consequently, persons aggrieved. The burden of challenging the fact of aggrievement was then on the petitioner to produce evidence to controvert this fact. The petitioner did produce some evidence to this effect, but such evidence, when considered with that produced by the protestants and their witnesses, presented a conflict. Under such circumstances this Court feels justified in concluding that, apart from the prima facie presumption in their favor, there was sufficient evidence before the Board to establish that the three named protestants were aggrieved persons. If anyone of them fits that category, the Court should entertain the appeal even though the others are not persons aggrieved."

We adopt this statement of the lower court as correctly stating the relevant facts and applicable law. The petitioner Witney makes the argument that if the Board had *granted* that portion of the application for reclassification for Phases III and IV, the protestants might well be "persons aggrieved," but that, by the denial by the

614

Board of that portion of the application for the requested reclassification, the protestants were by that action not owners of land sufficiently near to Phases I and II to be, prima facie, persons aggrieved, nor would the testimony support their "aggrievement" from the granting of the portion of the application for the reclassification of Phases I and II.

The subject property in the application filed by the petitioner consisted of all 299.19 acres considered in Phases I, II, III and IV for convenience in indicating *the anticipated time of construction* of the respective portions of the project. There were not *four cases*, but *one case*. When the protestants established their "aggrievement" resulting from that project they were parties aggrieved regardless of the outcome of the case before the Board on its merits, *Bryniarski, supra.* They then had the right to appeal to the Circuit Court from the granting by the Board of any portion of the requested reclassification and, most certainly to defend the action of the Board in so far as it ruled in favor of their position both before the Circuit Court and in this Court on a cross-appeal by the Petitioner Witney. We hold that the protestants have established their status as "parties aggrieved" to appeal to the lower court and to this Court.

2.

The protestants and appellants in this Court earnestly contend that the lower court erred in declining to hold that the Board acted arbitrarily and capriciously in affirming the reclassification for Phases I and II. We do not agree with this contention.

The Board found that there had been an error in the original comprehensive zoning map promulgated December 20, 1955, in failing to provide for any rental housing for the entire 8th Election District. It placed its principal reliance, however, upon the changes in the character of the neighborhood to support its reclassification for Phases I and II. The lower court also relied upon the evidence supporting a change in the character of the neigh-

borhood in sustaining the Board's action in reclassifying the portion of the subject property included in Phases I and II.

We do not find it necessary to decide whether or not the Board acted properly in finding a mistake in original zoning, inasmuch as we are of the opinion that the evidence before the Board was sufficient to justify a finding by the Board that there had been a change in the character of the neighborhood since the comprehensive rezoning in 1955, most of the changes occurring since 1961 when the Board rejected an application for reclassification for 28.3 acres of land located in Phase IV as the site of the proposed Inn. The Board stated:

> "In the Board's opinion it is indeed difficult, if not impossible to find any section of Baltimore County that has changed more rapidly in the last five to ten years than the vicinity of the subject property."

Not only did the expert and other witnesses for the petitioner Witney testify to the many changes since 1955 which had changed the character of the neighborhood of the subject property, but several of the witnesses for the protestants testified to the same effect.

Since the comprehensive zoning map was promulgated on December 20, 1955, there has been an important change in the available utilities in the area. The interceptor capacity was increased inside the Baltimore City line and arrangements were made between Baltimore County and Baltimore City to extend the water and sewer mains up to the neighborhood of the subject property. There were also many changes in the road patterns in the neighborhood of and within the subject property. The real estate expert for the petitioner Witney gave a list of some 24 zoning changes in the immediate vicinity of the subject property which, in his opinion, changed the character of the neighborhood. Many of these reclassifications changed the existing zoning to apartment zoning, some immediately adjacent to the subject property and some less than one quarter of a mile from it.

The protestants and appellants correctly point out that under our decisions changes which result in a change in the character of the neighborhood may *justify* and support a reclassification of the subject property by the Board but they do not *require* the Board to grant the requested reclassification. *Skipjack Cove Marina, Inc. v. County Commissioners for Cecil County,* 252 Md. 440, 250 A. 2d 260 (1969) and prior Maryland cases therein cited. They further correctly point out that rezoning, like original zoning, must be in the general public interest for the promotion of the health, safety and general welfare of the community as well as in the interest of the individual landowner. *Huff v. Board of Zoning Appeals of Baltimore County,* 214 Md. 48, 133 A. 2d 83 (1957). The principal thrust of their argument is that the evidence before the Board established that the granting of the portion of the application to reclassify the land in Phases I and II would (1) overburden the area with apartments, (2) the increased traffic from the apartments would create traffic congestion in the roads in the immediate vicinity and (3) the erection of the proposed apartments would overcrowd the schools in the area. Without reviewing the voluminous testimony in detail, it may be summarized by stating that although there was evidence from which the Board *might* have found that the conclusions urged by the protestants would result from the reclassification of Phases I and II, there was other evidence from which the Board *could* find—as it did find—that such a reclassification would not result in an imbalance of apartment zoning, in congestion in the roads in the immediate vicinity and in overcrowding of the schools in the area. As we have observed many times if the issues before the Board are fairly debatable, the Courts may not substitute their judgment for that of the Board. *Richmond Corp. v. Board of County Commissioners for Prince George's County,* 254 Md. 244, 255 A. 2d 398 (1969). See *Ark Readi-Mix Concrete Corp. v. Smith,* 251 Md. 1, 4, 246 A. 2d 220, 221-222 (1968) and prior Maryland cases cited in the opinion in that case.

There was also sufficient evidence to support the Board's finding that the criteria set forth in Section 502.1 of the Baltimore County Zoning Ordinance for the granting of the requested Special Exception for the apartment project in Phases I and II had been established. See *Brouillett v. Eudowood Shopping Plaza, Inc.*, 249 Md. 606, 241 A. 2d 404 (1968).

We conclude that the lower court properly ruled that there was sufficient evidence before the Board to make the issues in regard to the reclassification of Phases I and II fairly debatable and properly affirmed the Board's action in this regard.

### 3.

We now turn to the interesting argument of the petitioner Witney as cross-appellant, that the lower court erred in declining to hold that the Board acted arbitrarily and capriciously in not granting the reclassification for Phases III and IV.

Witney concedes that the existence of evidence of change in the character of the neighborhood sufficient *to justify* a reclassification does not *compel* the Board to grant the requested reclassification. *Skipjack Cove Marina, Inc. v. County Commissioners for Cecil County, supra*. The Board may reject the application for reasons based upon substantial evidence in the record before it. Witney, however, argues that although the Board *might* have predicated its rejection of the requested reclassification for the land included in Phases III and IV upon substantial evidence in the record, it did not do this, but, on the contrary, based its rejection upon reasons not supported by any substantial evidence and, hence, it acted in an arbitrary and capricious manner in a legal sense, relying upon our decision in *Board of County Commissioners for Prince George's County v. Ziegler*, 244 Md. 224, 223 A. 2d 255 (1966). Witney points to the following findings of fact made by the Board:

> 1. "In the Board's opinion it is indeed difficult, if not impossible, to find any section of Bal-

timore County that has changed more rapidly in the last five to ten years than the vicinity of the subject property"

2. "* * * the Board finds as a fact that the present road systems will adequately accommodate at present Phases I and II of the project without undue congestion. We are further satisfied that the *additional improvements that will be completed within the next seven to ten years could adequately service the entire project* without creating any undue congestion in the roads and streets of the immediate area"

3. "* * * the Board *does not find,* considering the explosive growth of the area with all types of housing and the lack of any up-to-date comprehensive master plan for the area, *that the granting of this petition would create any imbalance in the community or overburden the community with apartment housing*"

4. "The Petitioner has presented a logical, well planned scheme of development for its property covering some 20 years in time for construction and an investment of 75 to 80 million dollars."

5. "* * * all of the changes in utilities, roads, reclassifications, etc., in the immediate vicinity affect the entire property, * * *"

6. "Also, while as of the present time, the Board is satisfied that public facilities, particularly roads and schools in the immediate area, can adequately service Phases I and II, there is some doubt in the Board's mind whether or not the existing facilities *without improvements* would be presently adequate to handle the entire project as proposed by the Petitioner, *if constructed in its entirety immediately*"

(All emphasis supplied.)

Witney further points out that there was no evidence

that the project would be constructed in its entirety immediately and that the evidence indicated the contrary. There is force to this argument, but we have concluded that taking the Board's opinion and findings *as a whole,* the action of the Board in rejecting the requested reclassification for Phases III and IV was not arbitrary or capricious but was fairly debatable under our decisions.

The weight of the evidence does indicate that if the entire project were financed and constructed *by Witney, itself,* or indeed by any *one development company,* it would be impracticable to attempt to develop the Phases I, II, III and IV otherwise than substantially on the timetable indicated in regard to the construction of Phases I, II, III and IV, respectively. There is, however, no way that the Board can legally require an adherence to that timetable by Witney. If the requested reclassification of Phases III and IV had been granted by the Board, Witney could sell those parcels of rezoned land to *another* developer—as was done in regard to the Briarcliff Apartment land—and, in that event, Phases III and IV might well be constructed simultaneously with the construction of Parcels I and II and might well result in the injuries to the public interest set forth in the testimony introduced by the protestants and their experts. Indeed, the testimony of Albert B. Kaltenbach, Director of Public Works for Baltimore County—produced as a witness for the petitioner Witney — was understandably far from definite in regard to when, in the future, much of the needed construction to justify the rezoning of the land in Phases III and IV would actually be accomplished. He explained that in regard to a certain project, he was not sure whether or not the funds were available. He testified that the plans to improve the Warren Road, a State road, which badly needed improvement, were "not in the state's program." So far as the plans to improve the Sherwood Road were concerned, he stated: "* * * I think there have been some small sections that have been widened, with development, but we don't anticipate any major improvements to that road, at least in the fore-

seeable future." Nor was he sure that there were any "definite plans existing for improving that intersection where Bosley meets Warren." In view of our holding in *Franklin Construction Co. v. Welch*, 251 Md. 715, 248 A. 2d 639 (1968) that the power to reclassify may not properly be used to "force" the State or county officials to make a road improvement, it was reasonable for the Board to consider the existing road situation and the improvements already under contract or certain of accomplishment in a reasonable time in the future, rather than to reclassify on the basis of uncertain proposed road changes in the too distant future.

Then, too, the evidence before the Board indicated that construction of the commercial portion of Phase IV would be dependent upon the success of the surrounding apartment project. It is, therefore, not unreasonable to wait for the construction of the apartment project, and the evaluation of operation, before authorizing the requested reclassification for the commercial portion of Phase IV. It will be helpful to consider the Board's entire opinion as it relates to the denial of reclassification for Phases III and IV. The Board stated:

> "These substantial changes certainly justify the requested rezoning of the entire property but do not necessarily compel it. The Petitioner has presented a logical well planned scheme of development for its property covering some twenty years in time for construction and an investment of seventy-five to eighty million dollars. It appears to the Board that while all of the changes in utilities, roads, reclassifications, etc., in the immediate vicinity affect the entire property, that the granting of Phases 3 and 4 of the subject petition at this time might be premature. By the Petitioner's own testimony construction of Phase 3 will not begin until at least ten years from now, while the construction of Phase 4 would be another five years in the fu-

ture, and the need for at least the commercial portion of the property would be based upon the success of the apartment project surrounding it. Also, while as of the present time the Board is satisfied that public facilities, particularly roads and schools in the immediate area, can adequately service Phases 1 and 2, there is some doubt in the Board's mind whether or not the existing facilities without improvements would be presently adequate to handle the entire project as proposed by the Petitioner, if constructed in its entirety immediately. Therefore, while the record may contain evidence to justify the reclassification of the entire tract, as requested, it appears to be in the best interests of Baltimore County and the general welfare of its residents at this time to limit the reclassification to the parcels of land that are proposed to be developed under Phases 1 and 2, in accordance with Petitioner's Exhibit No. 9. It should be noted that there are no individual homes adjoining the Phase 1 parcel. It is surrounded on three sides by institutional use, R-A zoning and publicly owned land, and on the fourth side by the Petitioner's property, while Phase 2 abuts an existing apartment development on two sides and the remainder of the Petitioner's property on a third side. If these two parcels are successfully developed, as contemplated, the Petitioner has a right to file another application on the remaining sections if he so desires, and can justify the need for them. If the requested reclassification for all four parcels were granted at this time, the applicant would not be limited to construction on the undeveloped or unused portions of his land, nor would he be obligated to begin with the construction of the apartment project. By granting only Phases 1 and 2 of the petition at this time, the existing golf course on the Pe-

titioner's land would remain intact to be used either as a golf course, which seems to the Board an excellent use for the land, or for future development, in accordance with its existing zoning."

As we have indicated, considering the Board's opinion and findings as a whole and the relevant evidence already mentioned, we do not find that its action in denying the requested reclassification for Phases III and IV was arbitrary and capricious.

As the Board observes, Witney may file another application for Phases III and IV as and when in the future Phases I and II are completed and a sufficient number of the contemplated improvements in the road system and in the school system have been accomplished to justify the Board in granting the then requested reclassification. The Board could reasonably conclude that, under all of the facts and circumstances already mentioned, the granting of the requested reclassification for Phases III and IV would be premature, but that the denial of the reclassification at this time would not prejudice Witney in making a later application for reclassification as and when the future changes in the neighborhood would lead the Board to grant the then requested reclassification.

It may be added that some political subdivisions in this State have met many of the problems inherent in the type of development on substantial acreage presented in the present case by providing for a "floating zone" with established criteria and with a provision that there may not be a substantial departure from the criteria as applied in a specific development, except by a modification of the approved plan with the approval of the Board after notice, hearing, etc. This zoning and planning "tool" would appear to be ideally adapted for use in connection with the type of development involved in the present case, but Baltimore County has not yet adopted this type of "floating zone." It must come as no surprise to the zoning and planning officials of Baltimore County,

as well as to the property owners and citizens of that county, that in the absence of the promulgation of a new comprehensive zoning map since December 20, 1955—a period of some fourteen years during a volatile construction period with increasing pressures from a rapidly growing population—that landowners and developers in attempting to supply the housing needs of the population are forced to petition for reclassification in order to develop their land and supply the basic housing needs. As we have pointed out in our prior decisions, "zoning is not static," *Jacobs v. County Board of Appeals for Baltimore County*, 234 Md. 242, 247-8, 198 A. 2d 900, 902 (1964), so that the Board is often placed in the difficult position of having little guidance from an outdated comprehensive zoning map already greatly modified and yet is required to evaluate the property rights of the landowners and the pressing need for additional housing. In our opinion, the Board reasonably carried out its obligations in the present case and the lower court's order affirming the action of the Board will be affirmed.

> *Order of June 10, 1969, affirmed, the costs to be paid by the appellee and cross appellant Witney Land Company.*