521 A.2d 770

MONTGOMERY COUNTY, Maryland, et al.

v.

GREATER COLESVILLE CITIZENS
ASSOCIATION, INC., et al.

No. 696 Sept. Term, 1986.

Court of Special Appeals of Maryland.

March 4, 1987.

John J. Delaney (James W. Tavel, Larry A. Gordon, John L. Hollingshead and Linowes and Blocher on the brief), Silver Spring, for appellant, DMD Development Corp.

Alan M. Wright, Sr. Asst. Co. Atty. (Paul A. McGuckian, Co. Atty. on the brief), Rockville, for appellant, Montgomery County Council.

Roger W. Titus (Titus & Glasgow on the brief) Rockville, for appellees.

Argued before ALPERT, BLOOM, and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

This is an appeal from the judgment of the Circuit Court for Montgomery County, reversing the decision of the County Council for Montgomery County, sitting as the District Council for that portion of the Maryland—Washington regional district within Montgomery County (District Council), one of the appellants herein, to rezone a 22.32 acre tract of land owned by appellant DMD Development Corporation, (applicant). We glean from the four questions submitted by appellants that the critical issue on appeal may be succintly stated as whether there is substantial evidence in the record to sustain the District Council's finding that improvements proposed to be made to a critical intersection were, at the time of rezoning, reasonably probable of fruition in the foreseeable future. We conclude that there is; therefore, we will reverse.

■ The appellees herein[1] proffer, "as an alternative basis for affirmance of the lower court's judgment," the argument that

> The decision of the County Council was made on the basis of evidence not of record in violation of Section 59–H–6.1 of the Zoning Ordinance and the right to due process of law guaranteed to the appellees by the Fourteenth Article of Amendment to the United States Constitution and Article 24 of the Declaration of Rights of the Maryland Constitution.

This argument was presented to and specifically rejected by the lower court. *See* Maryland Rule 1085. Moreover, appellees did not file a cross-appeal from that judgment. A party to a trial court proceeding may obtain direct appellate review of an adverse ruling only if that party has filed a

---

1. Greater Colesville Citizens Association, Inc., David and Phyllis Tandreau; Herbert A. and Daphne Phillips; James A. and Margaret Gooch; and William and Nora Costello.

valid and timely order of appeal. *Fennell v. G.A.C. Finance Corp.*, 242 Md. 209, 229, 218 A.2d 492 (1966); *Reece, Adm'r v. Reece*, 239 Md. 649, 657, 212 A.2d 468 (1965). *See also Md.—Nat'l Cap. P. & P. Comm'n v. Crawford*, 307 Md. 1, 37, 511 A.2d 1079 (1986); *Pearlman v. State*, 226 Md. 350, 173 A.2d 733 (1961); *Riviere v. Quinlan*, 210 Md. 76, 122 A.2d 332 (1956); Maryland Rules 1010 and 1011. Accordingly, we will not consider the argument.

The project at issue is "Nottingham Woods", a proposed residential development situated just northwest of the intersection of Randolph Road and New Hampshire Avenue in Silver Spring, Maryland. Because the tract on which the development is planned is zoned R–90 (single family residential units minimum lot size of 9,000 square feet) and applicant desired to construct 150 residential units, it sought rezoning to the PD–7 (planned development, maximum seven dwelling units per acre) zone. The rezoning application, along with the required binding development plan, was filed on May 22, 1982. The development plan proposed the development of 115 townhouses, 15 piggyback townhouses, 20 single family detached homes, open space and play areas, and a commuter parking lot. The development plan was subsequently amended to address the issue of critical significance to the District Council—the capacity of the intersection to accomodate traffic generated by the project. The amended plan required, as "an integral portion of the development plan", the extension, redesign and reconstruction of the Randolph Road/New Hampshire Avenue intersection, to be approved as part of the Montgomery County Capital Improvement Program (CIP) budget and to be undertaken as a developer—participation project. It is then this provision of the amended development plan, which is the major bone of contention on appeal, *i.e.,* whether the improvements proposed by applicant and which were later made a part of the county's CIP were reasonably certain of fruition in the foreseeable future.

The hearing examiner commented that applicant "has experienced more ups and downs than Friar Tuck". He

undoubtedly had reference to the progress of the application for rezoning through the zoning process; at least part of the process, if not all of it, had to be traversed on three separate occasions before final approval by the District Council. Its first trip was taken in an "up" mode, gaining favorable recommendations from the Montgomery County Planning Board technical staff and, after public hearings, from the planning board and the hearing examiner. The District Council, however, remanded the application to the hearing examiner for the development of more information about the traffic capacity of the Randolph Road/New Hampshire Avenue intersection. After further public hearings, the hearing examiner recommended that the application be denied, finding the existing intersection inadequate to handle the traffic to be generated by the project. The application thus came before the District Council for review a second time, this time in a "down" mode. It gained new life when the District Council once again remanded the application to the hearing examiner, this time "to await the development of circumstances where area road capacity can adequately and efficiently accommodate the proposed development."

Subsequent to the second remand, the applicant filed an amended development plan in which the applicant proposed major improvements "in design and construction to the Randolph Road/New Hampshire intersection." The proposed improvements, which were incorporated as an integral part of the plan, included construction of additional lanes and relocation of median strips on both Randolph Road and New Hampshire Avenue. After reviewing the amended development plan, the technical staff once again recommended approval of the application. Following another public hearing, the planning board did likewise, noting, however, that additional improvements, if found justified later in the process, might be required.

After the hearing examiner had conducted further public hearings, but before he made his findings and recommendations, the county's CIP for 1985–1990 was adopted by the

County Council. The applicant's proposed improvements to the critical intersection, to be accomplished through developer participation, were included.[2]

The hearing examiner extensively reviewed the history of the application and found the project to be compatible with the PD zone. He, therefore, recommended its approval of the rezoning. Concerning capacity of the critical intersection to accommodate the traffic to be generated by the project, the hearing examiner concluded that the proposed improvements, when completed would render the intersection adequate. He further found that the improvements were reasonably probable of accomplishment within the foreseeable future:

> The Examiner believes that the applicant's evidence satisfies the reasonably imminent test for several reasons. The P–D Zones are usually strict zoning requirements that impose many design and performance specifications upon the applicant that are not present in more traditional zoning categories. The P–D Zones include a staging element and require a linkage between the staging element and the CIP. Moreover, before any development can take place under an approved P–D Zone, the Planning Board must approve a site plan and will review extensively the impact of the proposed development on the community. Under this special category, zoning approval is only the first stage in several stages of government regulation and oversight. Further improvements may be required by the Board.
>
> The reason for the requirement that future improvements be reasonably imminent is a concern by zoning authorities and the courts that premature development could adversely impact existing or planned public facilities to the detriment of the public welfare. Hence, the "reasonably

---

**2.** The resolution approving the CIP contained a provision that "[n]o commitment is made herein for the future use of County funds for projects currently financed by non-local grants." There is nothing in the record to indicate that the road improvements at issue here were, or were contemplated to be, accomplished by non-local grants.

probable of fruition" test provides a useful measure in evaluating the issue of prematurity at the zoning stage, especially in those cases where post zoning government controls are absent.

The present Development Plan not only corrolates development to the proposed improvements and the *approved* CIP, it absolutely requires it. The Development Plan incorporates the necessary improvements as an integral part of the plan. The Planning Board may not authorize development that fails to comply with this requirement. This fact renders the present Development Plan a much more stringent control over premature development than any test that attempts to measure whether the improvements are "reasonably probable of fruition in the foreseeable future." The plan makes the improvements definite, explicit, and an essential prerequisite to development. Under the "reasonably probable" test, a bad guess about future events could still lead to premature development. However, this situation cannot occur under the current Development Plan because any uncertainty has been eliminated. The Examiner concludes that the applicant has not only satisfied the burden of showing that the improvements are reasonably imminent but has, in fact, exceeded it.

The District Council agreed with the findings and conclusions of the hearing examiner and, thereupon, approved the application "subject to the specifications and requirements of the amended development plan."

Appellees appealed to the Circuit Court. In its initial Memorandum Opinion and Order, that court affirmed the decision of the District Council, finding that "the traffic issue was fairly debatable". In response to appellees' motion for reconsideration, however, the court filed an Amended Memorandum Opinion and Order, in which it reached the opposite result. The District Council's decision granting the rezoning was, therefore, reversed. This appeal followed.

■ The PD zone is a "floating zone". "A floating zone is differentiated from a so-called 'Euclidean' zone, in that while the latter is a specific area defined by boundaries previously determined by the zoning authority, the former has no such defined boundaries and is said to 'float' over the entire area of the district or zone where it may eventually be established." *Bigenho v. Montgomery County,* 248 Md. 386, 391, 237 A.2d 53 (1968). It is then

a special use district of undetermined location, a district in which the proposed kind, location, size and form of structures must be preapproved, and which like a special exception use, is legislatively predeemed compatible with the areas in which it may thereafter be located on a particular application, provided specified standards are gratified and incompatibility is not revealed.

*The Chatham Corporation v. Beltram,* 243 Md. 138, 150, 220 A.2d 589 (1966).

Therefore, "the vital and decisive determination by the District Council is whether the application complies with the expressed purposes for which the accomplishment of this floating zone was established." *Aubinoe v. Lewis,* 250 Md. 645, 652, 244 A.2d 879 (1968). And "special precautions are to be applied to ensure that there will be no discordance with existing uses". *Bigenho, supra. See The Chatham Corporation, supra.* Furthermore, there may be no substantial departure from the criteria applied to the establishment of a floating zone in a particular instance except by modification of the approved plan with the approval of the zoning authority, after notice and hearing. *See Wier v. Whitney Land Company,* 257 Md. 600, 622, 263 A.2d 833 (1970).

In floating zone cases, as in all other zoning cases, "it is not the function of the reviewing court to zone or rezone, or to substitute its judgment for that of the zoning authority if the action of the zoning authority is based on substantial evidence and the issue is thus fairly debatable." *Northampton v. Prince George's County,* 273 Md. 93, 101, 327

A.2d 774 (1974). *See Anne Arundel County v. A–Pac, Ltd.*, 67 Md.App. 122, 126, 506 A.2d 671 (1986); *Floyd v. County Council, Prince George's County*, 55 Md.App. 246, 255, 461 A.2d 76 (1983); *Wheaton Moose Lodge v. Mo. Co.*, 41 Md.App. 401, 421, 397 A.2d 250 (1979). There is substantial evidence in the record if there is "a little more than a 'scintilla of evidence' ", *Floyd*, 55 Md.App. at 258, 461 A.2d 76, and the issue is fairly debatable if "a reasoning mind could reasonably have reached the result the [District] Council reached upon a fair consideration of the fact picture painted by the entire record." *Wheaton Moose Lodge, supra.* If the issue is fairly debatable, the court may not substitute its judgment for that of the administrative body. *Eger v. Stone*, 253 Md. 533, 542, 253 A.2d 372 (1969); *Board of County Commissioners of P.G. County v. Farr*, 242 Md. 315, 218 A.2d 923 (1966).

The District Council made the express findings required by § 59–D–1.6.[3] as a condition precedent to granting the requested rezoning. As to the finding critical to this ap-

---

3. Pursuant to this section, the District Council must make findings:
    (a) That the zone applied for is in substantial compliance with the use and density indicated by the master plan or sector plans, and that it does not conflict with the general plan, the County capital improvements program, or other applicable County plans and policies.
    (b) That the proposed development would comply with the purposes, standards and regulations of the zone as set forth in Article C, would provide for the maximum safety, convenience and amenity of the residents of the development and would be compatible with the adjacent development.
    (c) That the proposed vehicular and pedestrian circulation systems are safe, adequate, and efficient.
    (d) That by its design, by minimizing grading, and by other means, the proposed development would tend to prevent erosion of the soil and to preserve natural vegetation and other natural features of the site....
    (e) That any proposals, including restrictions, agreements or other documents, which show the ownership and method of assuring perpetual maintenance of those areas, if any, that are intended to be used for recreation or other common or quasi-public purposes, are adequate and sufficient.

peal, that made pursuant to subsection (c),[4] it found that "The [applicant's] Amended Development Plan propose[d] vehicular and pedestrian circulation systems that are safe, adequate, and efficient" and that the proposed improvement to the critical intersection, when viewed in combination with the zoning scheme and their inclusion in the county's CIP, are reasonably probable of fruition in the foreseeable future. Although agreeing that the District Council made the necessary findings, the trial court disagreed that its decision was supported by substantial evidence in the record. Characterizing the issue as "whether a conditional mandate rule is substitutable for the reasonably imminent test as its functional equivalent or better; whether 'will do' is both equivalent to and substitutable for 'practically done' ", and the hearing examiner's conclusions as "provid[ing] a novel approach to the 'reasonably imminent' test", the court found:

> There was no evidence to support a finding that sufficient improvements were reasonably imminent to create an acceptable traffic condition that could accommodate the increased traffic to be generated. The Maryland State Roads Commission was not a party to these proceedings; there was no evidence as to *when*, if at all, the substantial road improvements the applicant would like to see accomplished will be both funded and then constructed by the state. "Imminent" connotes a sense of time as well as probability.... (emphasis in original)

The Court then observed:

> However, it may be noted that a conditional mandate rule, were it to be adopted or permitted, is conceptually a far extension of the floating zone beyond its present boundaries. The floating zone concept may have taken zoning applicants out of Euclidean repair trucks and placed them in floating zones lighter than air hovering craft (not

---

**4.** The District Council adopted the hearing examiner's report and, in so doing, adopted his findings. *See Templeton v. County Council of Prince George's County,* 23 Md.App. 596, 598–99, 329 A.2d 428 (1974).

necessarily Goodyear since McDonald's has come on the scene), but it still does not authorize the dropping of a presized development net over just any parcel or parcels of land. Here the net may not be dropped until all the requirements (including traffic compatibility) of the PD–7 zone are either in place or "reasonably imminent" of being in place. Permit the substitution of conditions (particularly those beyond the control of the applicant) for requirements and the net may be dropped virtually any-where. Should this substantial change in the concept of zoning law (which rezones first and then looks to later develoment stages for protection of surrounding proper-ties and the public generally) take place, the change should be accomplished in a manner other than by calling a duck an elephant.

■ As we have seen, the question squarely presented on this appeal is whether, as the trial court first recognized, the traffic issue is fairly debatable. *See, e.g., Montgomery County v. Laughlin,* 255 Md. 724, 734–35, 259 A.2d 293 (1969); *Tauber v. Montgomery County,* 244 Md. 332, 333–37, 223 A.2d 615 (1966); *Wheaton Lodge,* 41 Md.App. at 422, 397 A.2d 250. The applicable standard of review, however, is whether the improvements proposed to be made in the traffic system are reasonably probable of fruition in the foreseeable future. The trial court interpreted this standard as requiring the improvements to be "reasonably imminent",[5] a more restrictive test, and, in fact, to be "practically done" if the rezoning sought was to be justi-fied. In so doing, the court erred.

■ Of primary concern in the decision to rezone property to a floating zone is that the development undertaken be consistent with the master plan and promote the purposes

---

**5.** Our research reveals that the phrase, "reasonably imminent" has been used in one zoning case, *Bowie v. Board,* 253 Md. 602, 613, 253 A.2d 727 (1969). It was used by the trial judge, a portion of whose opinion was quoted in the case, as a short version of "reasonably probable of fruition in the foreseeable future."

of the zone. Thus, whether substantial evidence exists to support the decision, either to grant or to deny the rezoning, may not be determined in isolation; rather the decision is to be reviewed in light of the zoning scheme and the record as a whole. *Bigenho,* 248 Md. at 396, 237 A.2d 53. Because absolutely essential to a finding that the rezoning will be compatible with the master plan and the purposes of the zone and because it is but one aspect of the overall decision, the question of the adequacy of the vehicular circulation system to accommodate the traffic which the development will generate must be analyzed in the same fashion. Such an analysis requires not only that the existing circulation system be considered but that any changes proposed to be made in it, and their timing, be considered as well. The precautions contained in the zoning ordinance and designed to ensure minimum interference with existing uses and that the development is, indeed, consistent and compatible, are also to be taken into account. *See Bigenho,* 248 Md. at 396, 237 A.2d 53 (In finding substantial evidence to support rezoning, the Court noted: "There are adequate precautions provided in Montgomery County Code (1965), Sec. 111–16, ... to insure a minimum interference with existing uses," and that that section, which provided for site plan approval, could be utilized to deny an application for a building permit if the specifications called for a building detrimental to the surrounding area.)

A PD zone

is in the nature of a special exception, and shall be approved or disapproved upon findings that the application is or is not proper for the comprehensive and systematic development of the county, is or is not capable of accomplishing the purposes of this zone and is or is not in substantial compliance with the duly approved and adopted general plan and master plans. In order to enable the council to evaluate the accomplishment of the purposes set forth herein, a special set of plans is required for each planned development, and the district council and the planning board are empowered to approve

such plans if they find them to be capable of accomplishing the above purposes and in compliance with the requirements of this zone.

Montgomery County Code (1984), § 59–C–7.11.

Under the PD zoning scheme, an applicant for zoning must submit a development plan to the planning board. *See* generally § 59–D–1.1. The plan must be reviewed for "compatibility with the purposes and requirements of the zone," by the planning board, a hearing examiner, and the District Council. § 59–D–1.4.–1.6. The development plan, a part of the application for rezoning, § 59–D–1.2., is required to "clearly indicate how the proposed development would meet the standards and purposes of the zone applied for" and to contain detailed information necessary to facilitate review, including: (1) the physical characteristics of the site; (2) a map detailing the relationship of the site to the adjacent area and its uses; (3) the names and addresses of the adjacent property owners; (4) a land use plan; and (5) the relationship of the proposed development to the county's capital improvement program. § 59–D–1.3. Although the development plan may be amended either before or after it has been reviewed by the District Council, any proposed amendment must conform to the requirements of the initial development plan and the review process must afford interested persons an opportunity, through public hearing, to comment on the proposed amendment. § 59–D–1.7.

Even when rezoning has been granted and a development plan approved, no building or use and occupancy permits may be issued, § 59–D–3.0., until a proper site plan has been submitted to and approved by the planning board. § 59–D–1.8. The site plan must be consistent with the approved development plan, § 59–D–3.1., and include information respecting the details of the construction proposed, certain topographical information, the location of existing improvements and facilities, and "a development program stating the sequence in which all structures, open spaces, vehicular and pedestrian circulation systems, landscaping

and recreational facilities are to be developed." § 59–D–3.-2. Planning board approval may be given only after a public hearing has been held on each site plan application. § 59–D–3.4. Once approved, "[a]ll the requirements and features that are part of the approved site plan shall be executed in accordance with the applicant's development program required by section 59–D–3.2.3(m) [6] [and] [a] performance bond securing compliance with and full execution of all features of the site plan may be required to be posted with the planning board in an amount established by the planning board." [7] § 59–D–3.5.

In this case, as in a typical zoning case involving the issue of the adequacy of the existing traffic system, it need not be shown that proposed improvements to the system are "practically done" in order to justify rezoning; all that is required is that the proposed improvements be reasonably probable of fruition in the foreseeable future. *See Rohde v. County Board,* 234 Md. 259, 199 A.2d 216 (1964); *Trustees v. Baltimore County,* 221 Md. 550, 158 A.2d 637 (1960); *Missouri Realty, Inc. v. Ramer,* 216 Md. 442, 140 A.2d 655 (1958).

The "reasonably probable of fruition in the foreseeable future" test is functionally a mechanism for gauging the likelihood of premature development and, thereby, to avoid it. As such, it necessarily involves assessing the probability that actions required to be done in the future will, in fact, occur. The following cases are illustrative.

In *Rohde,* a critical issue was the adequacy of the traffic system to accommodate the development rezoning would generate. The zoning authority, in granting rezoning, considered the proposed extension of Goucher Boulevard, a

6. The provision calling for a development program.

7. Section 59–D–3.3. provides for an agreement, to be signed by the applicant and the planning board, containing "language stating that the agreement is also binding upon the applicant, successors and assigns" and requiring the applicant to execute all features of the site plan.

contemplated improvement in the system. The Court affirmed. It relied on the testimony that upon the county's request, the State Roads Commission would build the proposed extension. Even though the county had not made the request, and "there was some question as to just how soon the Commission could or would act," the Court concluded that the testimony "was sufficient to show that this extension was 'reasonably probable of fruition in the foreseeable future'" and, therefore, was properly considered. *Id.*, 234 Md. at 264, 199 A.2d 216. To like effect is *Trustees v. Baltimore County.* At issue there was classification of property pursuant to a new comprehensive zoning map and the adequacy of the traffic system to accommodate development pursuant to that classification. When the map was adopted, part of the Baltimore Beltway had been constructed and there were plans to construct a Northwest Expressway and to widen McDonough Road. Although the plans for the Northwest Expressway were "... as of the time of trial ... tentative and somewhat uncertain", *id.*, 221 Md. at 569–70, 158 A.2d 637, there was testimony in the record that "the existing and proposed roadways were sufficient to accommodate any traffic increase engendered by the new classification". *Id.*, at 570, 158 A.2d 637. Upholding the County Council's decision on the traffic issue, the Court stated:

> "Of course, the county council was not confined in its deliberations upon the recommended new comprehensive plan exclusively to roadways then in existence. If this were so, it would destroy many of the advantages of zoning. A comprehensive plan ... is specifically designed "to control and direct the use of land and buildings according to present and *planned future* conditions." We think the council was entitled to consider any proposed new highways, or proposed improvements to existing highways that were reasonably probable of fruition in the foreseeable future in determining the proper classification for the subject property. (emphasis in original)

*Id.*, at 570–71, 158 A.2d 637.  The Court relied upon *Missouri Realty, Inc.*, in which the construction of a public street was determined to be imminent where funds for the construction had been budgeted, bids were to be shortly advertised, and it was estimated that construction would be completed within two years of the filing of the application for rezoning.

The zoning ordinance under consideration here, with its requirement of development in compliance with an approved development plan and its post zoning controls, which permits the development to be phased in conformance with the accomplishment of required improvements or services, is also a mechanism for controlling premature development. It is, however, more flexible, as well as more effective than the "reasonably probable of fruition" test.  When that test is applied in the context of this ordinance not only is the timing of required improvements controlled, but because no development may be undertaken unless and until the required improvements have been made, the order of their completion vis-vis commencement of the approved development is controlled as well.  Thus, under this zoning scheme, improvements that are reasonably probable of fruition in the foreseeable future become reasonably certain of fruition. *See Wier*, 257 Md. at 622, 263 A.2d 833.

■  Viewed in context with the zoning scheme and the record as a whole, it is patent that there is substantial evidence that the improvements to the critical intersection were reasonably probable of fruition in the foreseeable future.  In the instant case, there was evidence that the critical intersection was insufficient to handle the traffic expected to be generated by the development.  In fact, it was this inadequacy that caused the lengthy process which finally culminated in the rezoning issue here.  But there was also evidence that the applicant proposed to improve the intersection, that the design of those improvements was approved, and, further, that the proposed improvements, when made, would render the traffic system adequate to accommodate traffic to be generated by the project.  More-

over, the proposed improvements were included in the county's CIP, which contemplates that improvements be made as development occurs. Furthermore, the zoning ordinance requires that no building permits may be issued until a site plan, consistent with the development plan approved by the District Council and containing a development schedule, has been submitted to and approved by the planning board, thus permitting a phasing of development consistent with the accomplishment of the improvements.

Considered in light of the review and approval processes preliminary and necessary to the issuance of required permits, the District Council, by approving the amended development plan mandated, as a precondition to development that the improvements be made. As regards the critical inquiry, therefore, in this case, as in all zoning cases—the timing of the required improvements in relation to development—the evidence supports the conclusion that not only are the improvements reasonably certain of fruition in the foreseeable future, but, given the zoning scheme, they are certain of fruition in whole or in part, prior to commencement of development, and certainly before its completion. In this sense, the hearing examiner is correct: the applicant exceeded its burden.

*Gerczak v. Todd,* 233 Md. 25, 194 A.2d 799 (1963), relied upon by the trial court, is not to the contrary. In that case, in which the adequacy of access to the property for which a special exception was sought was at issue, the petitioner had neither title, claim of title, nor "any reasonable expectation, of obtaining title or easement" in the road providing access to the property and the owner indicated, contrary to the condition placed on the grant of the special exception, that it did not intend to widen the road. It was in this context that the court, reversing the grant of the special exception, observed:

"But the duty of the board, to make certain that adequate access is provided, is not satisfied by a vague showing of permissive use or indefinite future expectations."

233 Md. at 27, 194 A.2d 799. Neither is *Wheaton Moose Lodge* inconsistent with the conclusion we reach. There, although a traffic issue was generated, there being ample evidence suggesting that a left turn storage lane would be necessary to avoid traffic problems, "[a]ppellant made no effort to show that such a left storage lane would, in fact, be constructed, and the council was obviously not obliged to assume that it would be." 41 Md.App. at 422, 397 A.2d 250. Thus, unlike the instant case, the petitioner in *Wheaton Moose Lodge* made no attempt to show that the necessary improvement was "reasonably imminent," i.e. reasonably probable of fruition in the foreseeable future. *Wheaton Moose Lodge* then is, in fact, supportive of the view we take of this case. To like effect, *see Montgomery County v. Laughlin,* 255 Md. at 734–35, 259 A.2d 293; *Tauber v. Montgomery County,* 244 Md. at 335–37, 223 A.2d 615.

Finally, there is a significant difference between granting an exception on condition that a road be widened when there is no way to ensure that the condition will be met prior to development (the situation in *Todd* ) and rezoning a particular tract to a floating zone in which development must proceed in accordance with a development plan schedule. *See Wier,* 257 Md. at 622, 263 A.2d 833. In the latter situation, there are controls; substantial departure from the development plan may not be made except by modification approved by the planning board. The District Council did not, therefore, rezone by calling "a duck an elephant." [8]

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLEES.

---

**8.** The trial judge's reliance on *Todd* for the proposition that a developer may not be required to pay for public improvements beyond the boundaries of its property, 233 Md. at 27, 194 A.2d 799, while an accurate statement of the law, is simply not applicable to the instant case. *Todd* also recognizes that a developer may contract to do so. *Id.* at 27–28, 194 A.2d 799. This is precisely what the applicant is permitted to do under the PD zone and, what is more, this is precisely what it did.